**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

# CAPITAL CASE

SEDRICE MAURICE SIMPSON                                        PETITIONER

v.                                    No. 5:04-CV-00429 JLH

LARRY NORRIS, Director,
Arkansas Department of Correction                              RESPONDENT

## OPINION AND ORDER

Sedrice Maurice Simpson was convicted of two counts of capital murder by a jury in the

Circuit Court of Dallas County, Arkansas, in 1998. He was sentenced to death. He petitions this

Court for a writ of habeas corpus.

Simpson asserts that he is entitled to relief on eight separate grounds: (1) his Sixth and

Fourteenth Amendment rights were violated when the trial court erroneously permitted the use of

two custodial statements against him; (2) he is ineligible for the death penalty because he is mentally

retarded; (3) his Sixth and Fourteenth Amendment rights were violated because he did not receive

effective assistance from post-trial counsel; (4) his Eighth Amendment rights were violated by the

trial court's failure to instruct the jury that the co-defendant's lesser sentence could be considered

a mitigating circumstance; (5) his Eighth Amendment rights were violated by the trial court's failure

and his attorney's failure to submit two different mitigating circumstances; (6) his Eighth

Amendment rights were violated by the jury finding that no mitigating circumstances were presented,

when in fact they were presented; (7) his Sixth, Eighth and Fourteenth Amendment rights were

violated by the stationing of numerous uniformed law enforcement officers around him during the

penalty phase arguments; and (8) his Eighth and Fourteenth Amendment rights were violated by the

trial court permitting the introduction of irrelevant victim impact testimony.

## I.      THE FACTS OF THE CASE.

The facts of this case were recounted by the Arkansas Supreme Court on direct appeal from

Simpson's conviction:

> In the early morning hours of June 20, 1997, the H & H Grocery in Holly Springs
> was robbed and the two women working there, [Wendy] Pennington and [Lena]
> Garner, were shot and killed with a 12-gauge shotgun.  About an hour later, Sedric
> Simpson hurriedly went to see Bernard Gregory and left a 12-gauge and some blood-
> covered money with him; Gregory later testified that, at this same time, he also saw
> blood on Simpson's hands.  After seeing Gregory, Simpson went to the home of
> Frederick Wright in Sparkman and told Wright that he had just "offed two bitches."
> Simpson was later arrested at Wright's house.  After being advised of his *Miranda*
> rights and taken to jail, Simpson signed a waiver-of-rights form and gave a statement
> implicating his co-defendant Ezekiel Harrison.  The officers taking the statement said
> that Simpson did not appear to be under the influence of drugs or alcohol at the time.
> Later, Simpson's mother reported that two guns were missing from the trunk of the
> car that Simpson had been driving, so the Dallas County officers searched the car and
> seized evidence from it.  Simpson had taken the car, which actually belonged to his
> sister, from his mother's house without her knowledge or permission.
>
> At the end of a three-day jury trial in May of 1998, Simpson was convicted of two
> counts of capital murder.  The jury found three aggravating factors-(1) the murders
> were committed for the purpose of avoiding or preventing an arrest, (2) the murders
> were committed for pecuniary gain, and (3) Simpson caused the death of more than
> a single person in the same criminal episode-and no mitigating factors.  Simpson was
> sentenced to death by lethal injection.

*Simpson v. State*, 339 Ark. 467, 469-70, 6 S.W.3d 104, 106-07 (1999).  Harrison pled guilty to

second degree murder and was sentenced to two 20-year terms of imprisonment to run consecutively.

He testified against Simpson.  Simpson's and Harrison's versions of the murders are substantially

the same except that each one claims that the other one fired the shotgun at Pennington and Garner.

Harrison testified that he was outside pumping gas when Simpson, without telling Harrison, took

the shotgun, went into the store, and fired the shots, after which Simpson exited with the cash register and with blood on his hands. Simpson testified that he was outside putting air in a tire when Harrison, without telling Simpson, took the shotgun, went into the store, and fired the shots, after which Harrison exited with the cash register. The jury apparently believed Harrison.

## II.     SIMPSON PURSUED POST-CONVICTION RELIEF IN THE STATE COURTS.

Simpson petitioned for post-conviction relief under Rule 37.5 of the Arkansas Rules of Criminal Procedure. The circuit court denied the petition as untimely. The Arkansas Supreme Court reversed and remanded with instructions to reinstate the petition, conduct a hearing, and make specific findings of fact and conclusions of law. *Simpson v. State*, 347 Ark. 564, 65 S.W.3d 878 (2002). The circuit court conducted a hearing and entered an order denying Simpson's request for post-conviction relief. The Arkansas Supreme Court affirmed the denial of post-conviction relief in *Simpson v. State*, 355 Ark. 294, 138 S.W.3d 671 (2003).

## III.    TWENTY-EIGHT U.S.C. § 2254 LIMITS THE AUTHORITY OF THIS COURT IN ITS REVIEW OF SIMPSON'S CASE.

Section 2254 of Title 28 of the U.S. Code permits a prisoner in state custody to petition a federal court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d)(1) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

3

The Supreme Court explained in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d

389 (2000), that to obtain federal habeas relief, a petitioner must first demonstrate that his case

satisfies the condition set by § 2254(d)(1):

> [Section] 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may
> issue only if one of the following two conditions is satisfied—the state-court
> adjudication resulted in a decision that (1) "was contrary to . . . clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States." Under the "contrary to"
> clause, a federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a question of law or if the state
> court decides a case differently than this Court has on a set of materially
> indistinguishable facts. Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

*Williams*, 529 U.S. at 412, 120 S. Ct. at 1523 (omission in original).  The purpose of § 2254(d) as

amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 is to limit the scope of

federal court review "in order to effect the intent of Congress to expedite habeas proceedings with

appropriate deference to state court determinations."  *Whitmore v. Kemna*, 213 F.3d 431, 433 (8th

Cir. 2000).

A state-court decision will be viewed as contrary to clearly established federal law if the state

court has applied a rule that directly contradicts a decision of the United States Supreme Court or

has reached a result opposite to a result reached by the United States Supreme Court on materially

indistinguishable facts.  *Kinder v. Bowersox*, 272 F.3d 532, 537-38 (8th Cir. 2001).  A state-court

decision will be viewed as an unreasonable application of clearly established federal law if the state

court identifies the correct governing legal principle from the Supreme Court's decisions but

unreasonably applies that principle to the facts of the petitioner's case.  *Williams*, 529 U.S. at 413,

120 S. Ct. at 1523.  "Stated simply, a federal habeas court making the 'unreasonable application'

inquiry should ask whether the state court's application of clearly established federal law was

objectively unreasonable."  *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521.  "[W]e must remember

that unreasonable is not the same as incorrect. The state court's application might be erroneous, in

our 'independent judgment,' yet not 'unreasonable.'"  *Kinder*, 272 F.3d at 538 (quoting *Williams*,

529 U.S. at 411, 120 S. Ct. at 1522).

A habeas petitioner may also seek relief on the ground that the state court made an

unreasonable determination of the facts.  28 U.S.C. § 2254(d)(2).  The state court's findings of fact

are presumed to be correct.  *Id*. at § 2254(e)(1).  The petitioner has the burden of rebutting that

presumption by clear and convincing evidence.  *Id*.; *Kinder*, 272 F.3d at 538.

Before bringing his claims to this Court, a petitioner must have presented his claims in state

court.  *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349, 158 L. Ed. 2d 64 (2004).  The

Eighth Circuit has explained:

> A prisoner seeking a writ of habeas corpus from a federal court must first fairly
> present his claims to the state courts in order to meet the exhaustion requirement of
> 28 U.S.C. § 2254(b).  We have held repeatedly that a claim has not been fairly
> presented to the state courts unless the same factual grounds and legal theories
> asserted in the prisoner's federal habeas petition have been properly raised in the
> prisoner's state court proceedings. We have also held that a claim is considered
> exhausted when the petitioner has afforded the highest state court a fair opportunity
> to rule on the factual and theoretical substance of his claim.

*Krimmel v. Hopkins*, 56 F.3d 873, 875-76 (8th Cir. 1995) (internal citations and quotation marks

omitted).  "In order to fairly present a federal claim to the state courts, the petitioner must have

referred to a specific federal constitutional right, a particular constitutional provision, a federal

constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (citation and internal quotation marks omitted).

Even when a petitioner has met the exhaustion requirement, the federal court may still be prevented from considering the federal habeas claim if it has been procedurally defaulted. "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S. Ct. 2546, 2555, 115 L. Ed. 2d 640 (1991). A claim may be lost due to procedural default at any level of state-court review: at trial, on direct appeal, or in the course of state post-conviction proceedings. *Kilmartin v. Kemna*, 253 F.3d 1087, 1088 (8th Cir. 2001). Another judge of this Court has explained:

> A petitioner's claim may also be procedurally defaulted for failure to present the claim to the state courts entirely. "[W]here a federal habeas petitioner raises a claim which has *never* been presented in any state forum, a federal court may properly determine whether the claim has been procedurally defaulted under state law, such that a remedy in state court is unavailable...." *Harris v. Reed*, 489 U.S. 255, 268-270, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (O'Connor, J., concurring); 28 U.S.C. § 2254(c). In other words, if the petitioner "failed to exhaust state remedies and the [state] court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,]" for purposes of federal habeas review, the petitioner's claim is considered procedurally defaulted. *Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. 2546. Here, too, the federal court cannot consider the petitioner's claim unless the petitioner can "excuse" the procedural default.
>
> A petitioner can "excuse" the procedural default of his claims in state court, and obtain federal habeas review of those claims, only if the petitioner can demonstrate either: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice, such as the conviction of one who is actually innocent. *Murray*, 269 F.3d at 898; *Fann v. Bowersox*, 247 F.3d 841, 843 (8th Cir. 2001). "Cause" for the procedural default exists, for example, when counsel has been

constitutionally ineffective or when an objective, external impediment prevented counsel from complying with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). To demonstrate prejudice, a petitioner must show "not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions ... [such that he] was denied fundamental fairness at trial." *Murray*, 477 U.S. at 494, 106 S.Ct. 2639 (internal quotation and punctuation omitted).

*Noel v. Norris*, 194 F. Supp. 2d 893, 903 (E.D. Ark. 2002) (alterations in original).

## IV.    SIMPSON ASSERTS EIGHT CLAIMS FOR HABEAS RELIEF.

### A.    Claim #1: Simpson claims that two involuntary custodial statements were used against him unconstitutionally.

Simpson first claims that the trial court violated his constitutional rights when it allowed the use of two involuntary custodial statements.

#### *(1)    The Written Statement.*

The first statement was given by Simpson shortly after his arrest and was reduced to writing by a law enforcement officer. R. at 433-34, 487-89. In the written statement, Simpson admitted that he was present at the store with Harrison when the murders were committed. However, Simpson denied that he shot the two women and told police that Harrison had done so. The written statement was not introduced into evidence, but the prosecutor told the jury about it in opening statement. Simpson asserts that the trial court erred by allowing the use of the statement. On direct appeal, the Arkansas Supreme Court addressed Simpson's claim in its opinion and found no error. The court said:

Simpson's third argument for reversal is that the trial court erred in denying his motion to suppress his custodial statement. He asserts that even though he was advised of his *Miranda* rights, his statement was given in an environment that was hostile, threatening, and coercive. The sheriff had told Simpson at the time of his arrest that he was "going to see [Simpson] fry" for killing the two women, and the

7

uncle of one of the victims was present for part of Simpson's interview. Because of these circumstances, he argues that it was error for the trial court to allow his statement into evidence.

The difficulty with this argument, however, is that the trial court never allowed Simpson's statement to be introduced into evidence. Although Simpson attempted to lay a foundation and introduce the statement during the testimony of the officer who took it, the prosecutor objected on the basis of hearsay. The objection was sustained, and the statement was never admitted into evidence. Because Simpson's statement was never used at trial, he cannot demonstrate prejudice. *Hayes v. State*, 274 Ark. 440, 447, 625 S.W.2d 498, 502 (1981). In that case, Hayes argued that the court erred in finding that a statement was given voluntarily. However, because the statements were not introduced at trial, the court said, "we fail to perceive nor has appellant demonstrated how he was prejudiced by the non-use of these statements." *Id.*

Even assuming that Simpson had been able to demonstrate some kind of prejudice, the State has met its burden of showing by a preponderance of the evidence that the statement was voluntarily given. *Id.* at 445, 625 S.W.2d at 501. This court makes an independent determination based on the totality of circumstances surrounding the statement, and we will not reverse a trial court's finding of voluntariness unless clearly against the preponderance of the evidence. *Id.* At the hearing on the suppression motion, five Dallas County officers testified that Simpson voluntarily signed the *Miranda* form and the waiver-of-rights form; several of them also testified that Simpson did not appear to be under the influence of drugs or alcohol at the time. Although Simpson testified that he felt coerced, the trial court found that he knowingly and voluntarily gave the statement. As in *Hayes*, it was for the trial court to resolve the credibility of the witnesses and any conflict in their testimony, *Hayes*, 274 Ark. at 446-47, 625 S.W.2d at 501, and that court's finding of voluntariness was not clearly against the preponderance of the evidence.

*Simpson*, 339 Ark. at 471-72, 6 S.W.3d at 107-08.  Simpson claims that the Arkansas Supreme

Court's decision was contrary to federal precedent.

Simpson's argument regarding the written statement is without merit.  First, as noted above,

the statement was never introduced into evidence.  Simpson offered the statement into evidence, but

the court sustained the prosecutor's hearsay objection.  R. at 1493.  Second, the mention of the

statement during the prosecutor's opening statement was not prejudicial.  When Simpson's lawyer

made his opening statement, he told the jury what happened that night, repeating the version of the facts that the prosecutor had attributed to Simpson's written statement. *Id*. at 1094. Simpson testified in his own defense, and on direct examination he reiterated the substance of the statement as the prosecutor had recounted it. The statement contained Simpson's version of events the night of the murders: Harrison shot Pennington and Garner without his knowledge while he was putting air in a tire. The opening statement by Simpson's lawyer and Simpson's testimony reiterated this account of the facts. *See id*. at 1504-75. The prosecutor's remarks about the written statement accurately summarized Simpson's defense; those remarks were not prejudicial to Simpson. Third, from a review of the totality of the circumstances, Simpson has failed to show by clear and convincing evidence that the state courts erred in finding that the statement was voluntarily given. 28 U.S.C. § 2254(e)(1).

Simpson's claim that the written statement was involuntary is dismissed.

### *(2)* ***The Oral Custodial Statement***.

The second statement was made orally to a jailer while Simpson was being transported. Simpson challenges the use of the oral custodial statement during the opening statement by the prosecutor. The transcript contains the following:

| | |
|---|---|
| Prosecutor: | After he had left that morning and while he was being transported to El Dorado, he was in the back seat of the car and the two individuals, the two men that were transporting him, the bailiff and one of the 309's, one of the gentlemen from down there who help around the jail they were having a conversation – |
| Simpson's Lawyer: | Your Honor, may we approach, please?  I hate to object during the Opening Statement and I apologize to the jury, but I'd like to object and approach, your Honor. |

(WHEREUPON, THE OBJECTION WAS MADE AT THE BENCH:)

| | |
|---|---|
| Simpson's Lawyer: | Your Honor, I don't think that statement has any relevance whatsoever.  It is simply a statement, I believe, that, "The girl will not be cooking hamburgers any more," it's not an admission of any sort.  It is simply an out of court statement and it doesn't have any relevance to any of the facts, the elements of the crime that are at issue here.  The only thing that it could serve to do is inflame the jury. |
| Prosecutor: | Whether or not it's an admission of guilt or it has any relevance with regard, that is a jury question, because [it's] the same phrase that he used earlier when he confessed to Frederick Wright. |
| The Court: | What phrase? |
| Simpson's Lawyer: | That's not what the statement was.  The statement is this (indicating).  That word is not in the statement.  The word is not in the statement. If that word is in the statement – That word is not in the statement and that makes all the difference in the world.  It is not the same statement, it is not the same language.  It's simply stating that she won't cook hamburgers any more, "Won't cook any more hamburgers any more."  That has nothing to do – |
| Prosecutor: | The statement is that, "Them bitches won't cook no more." |
| The Court: | Objection overruled. |
| Simpson's Lawyer: | For the record, Your Honor, does it matter whether or not he said, "Bitches." |
| The Court: | No. |
| The Court: | I don't know what the statement says. |
| Simpson's Lawyer: | Thank you. |
| The Court: | There should have been a ruling to suppress that if you wanted to suppress that and there's been no motion at all.  I don't know what the full statement says. |

| | |
|---|---|
| Prosecutor: | It is admissible, regardless of whether the word "Bitches" is in it or not. It's still admissible. |
| Simpson's Lawyer: | I just wanted a ruling. We have the statement and that's why we waited. It does not make any difference unless it does not. |
| The Court: | Overruled. |
| Simpson's Lawyer: | Thank you. I apologize. |

(WHEREUPON, THE HEARING CONTINUED AS FOLLOWS:)

| | |
|---|---|
| Prosecutor: | After Mr. Simpson was arrested and while he was being transported to El Dorado, the people that were doing the driving and were transporting him there, they had a conversation about this place. They were just talking about that convenience store and the hamburgers and the fact that they knew the girls and – at least one of them knew the girls – and what had gone on and that it was a tragedy and that it was too bad, and that they had made some really good hamburgers. Mr. Simpson chimed in with his thoughts on the matter to the effect – and I'll let the witness tell you exactly what he said – but to the effect, "Well, the bitches aren't cooking no more." |

R. at 1088-91. The prosecutor's statement actually conflated the testimony of two witnesses. Alan McClain, a jailer, testified without objection to a conversation that occurred while he and an Act 309 trustee were transporting Simpson to jail. During the transport, McClain commented to the Act 309 trustee that the older of the two victims "used to cook some good hamburgers," and Simpson stated, "She won't cook no damn more." *Id*. at 1467. Frederick Wright, Simpson's cousin, testified that Simpson came to his house at about 6:30 a.m. on the morning of the murder and said, "I just shot two bitches." *Id*. at 1130. Wright's testimony also was received without objection.

Simpson claims that the prosecutor's use of the oral custodial statement violated his constitutional rights for two reasons. First, he claims that the oral custodial statement was the fruit

of an illegal interrogation.   Simpson's habeas petition states that he was possibly prodded and perhaps threatened before he made the statement.   Pet. Writ Habeas Corpus at 10.   At trial, Simpson's lawyer objected only that the statement was irrelevant and that the effect would be to inflame the jury by attributing to Simpson a statement that described the victims as "bitches." Simpson's lawyer did not argue at trial that the statement was involuntary.   R. at 1090.   Here, Simpson cites no evidence that would be sufficient to show that the statement was made involuntarily.

Second, Simpson claims that it was constitutional error to use the statement because the prosecutor misled the jury.   Not every improper comment made by a prosecutor violates the Constitution:

> Prosecutorial misconduct does not always warrant the granting of a mistrial. The Supreme Court has acknowledged that given "the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial." *United States v. Hasting*, 461 U.S. 499, 508-09, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). Thus, the Supreme Court has held that an appellate court should not exercise its "[s]upervisory power to reverse a conviction ... when the error to which it is addressed is harmless since, by definition, the conviction would have been obtained notwithstanding the asserted error." *Id*. at 506, 103 S.Ct. at 1979.
>
> * * *
>
> In determining prejudice, we consider the scope of the objectionable comments and their relationship to the entire proceeding, the ameliorative effect of any curative instructions given, and the strength of the evidence supporting the defendant's conviction. As the Supreme Court has emphasized "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context." *United States v. Young*, 470 U.S. [1,] 11, 105 S.Ct. [1038,] 1044[, 84 L.Ed.2d 1 (1985)] (finding harmless error where the prosecutor had stated his opinion that the defendant was guilty and urged the jury to "do its job").

*United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995) (footnote omitted).  In *United States*

*v. Bowman*, 353 F.3d 546, 551 (7th Cir. 2003), the Seventh Circuit addressed a comparable situation,

stating:

> Bowman alleges that the prosecutor made numerous inappropriate propensity arguments during the opening statement and closing argument by stating, for example, that Bowman was a convicted felon; that he carried an unregistered, loaded gun with a "bullet in the chamber;" that he carried marijuana; and by listing the various traffic violations discovered as a result of the police stop. According to Bowman, these comments improperly led the jury to conclude that because he was guilty of past or other crimes, he must be guilty of illegally possessing a firearm. We are unconvinced. All of the statements made by the prosecutor were either based on stipulated facts or facts that were testified to, without objection, during trial. The prosecutor used these facts for permissible purposes—for example, to reiterate the narrative told by the police officers with regard to the traffic stop. *See* [*United States v.*] *Sandoval*, 347 F.3d [627,] 631 [(7th Cir. 2005)] (finding that the prosecutor's statements during opening, closing and sentencing accurately reflected witness testimony and thus were supported by the evidence and not improper). The prosecutor neither misrepresented the witnesses' testimony or the parties' stipulations, nor asked the jury to draw the inference that because Bowman had admitted problems abiding by the law, he must be guilty of the crime in question. The statements were therefore proper.

*Bowman*,  353 F.3d at 551.

Here, the prosecutor's statement was based on testimony that was received into evidence

without objection.  R. at 1130-31, 1135, 1468.  Although the prosecutor conflated two different

statements, there is no evidence that she intentionally misled or made false statements to the jury.

The prosecutor stated that she was paraphrasing and would let the witnesses testify as to exactly what

Simpson said.  The circuit court instructed the jury that opening statements were not evidence.  *Id.*

at 1585.  The potentially more prejudicial aspect of the prosecutor's comment was that she attributed

to Simpson the use of the term "bitches" to refer to the victims; but Wright testified without

objection that Simpson said that he had shot two "bitches."  The record as a whole does not show

prosecutorial misconduct or prejudice to Simpson.

Simpson has failed to meet his burden under 28 U.S.C. § 2254.  He failed to present the claim

to the Arkansas Supreme Court and preserve the issue for review.  Even if it were not procedurally

defaulted, Simpson has failed to prove that any constitutional violation occurred.

Simpson's claim that the oral custodial statement was used unconstitutionally is dismissed.

**B.**     **Claim #2: Simpson claims that he is ineligible for the death penalty
because he is mentally retarded.**

Simpson next claims that he is not eligible for the death penalty because of the Supreme

Court's decision in *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002).  In

*Atkins*, the Court held:

> Our independent evaluation of the issue reveals no reason to disagree with the
> judgment of "the legislatures that have recently addressed the matter" and concluded
> that death is not a suitable punishment for a mentally retarded criminal.  We are not
> persuaded that the execution of mental retarded criminals will measurably advance
> the deterrent or the retributive purpose of the death penalty.  Construing and applying
> the Eighth Amendment in the light of our "evolving standards of decency," we
> therefore conclude that such punishment is excessive and that the Constitution
> "places a substantive restriction on the State's power to take the life" of a mentally
> retarded offender.

*Atkins*, 536 U.S. at 321, 122 S. Ct. at 2252.  The Arkansas legislature was one of the legislatures

cited by the Supreme Court in *Atkins* as having enacted legislation to prohibit the execution of

mentally retarded persons.  *Id.* at 314, 122 S. Ct. at 2248 (citing ARK. CODE ANN. § 5-4-618).  In

interpreting *Atkins*, the Arkansas Supreme Court has stated:

> We believe that the court in *Atkins* merely reaffirmed this State's preexisting
> prohibition against executing the mentally retarded. Section § 5-4-618(b), which is
> part of Act 420 of 1993, provides that no defendant with mental retardation at the
> time of committing capital murder shall be sentenced to death.

14

*Anderson v. State*,  357 Ark. 180, 216, 163 S.W.3d 333, 354-55 (2004).

The Arkansas statute creates a procedure by which a defendant can show that he is mentally retarded and avoid the death penalty.  It provides, "A defendant on trial for capital murder shall raise the special sentencing provision of mental retardation by motion prior to trial."  ARK. CODE ANN.§ 5-4-618(d)(1). "If such motion is filed, the trial court must determine prior to trial whether the defendant is in fact mentally retarded." *Rankin v. State*, 329 Ark. 379, 390, 948 S.W.2d 397, 402-03 (1997) (citing *id*. at § 5-4-618(d)(2)).  Simpson never invoked this statute.  He did not invoke the statute before trial, at trial, or in his post-conviction petition.  He never asserted that he is mentally retarded until he filed his habeas petition in this Court.

Twenty-eight U.S.C. § 2254(e)(2) provides:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
    (A) the claim relies on–
        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Simpson's claim arguably relies on a new rule of constitutional law that has been made retroactive to cases on collateral review.  *Hill v. Anderson*, 300 F.3d 679, 681 (6th Cir. 2002).  However, because Ark. Code Ann. § 5-4-618 was in effect, he had ample opportunity to develop the factual basis for his claim of mental retardation but never did so.

Moreover, Simpson has not shown that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have imposed the death penalty.  His attorneys state in the habeas petition that they believe Simpson is retarded, but the record contains no evidence that he is.  Simpson's own testimony and that of his family do not support the allegation that he is mentally retarded.  Simpson testified at the guilt phase of the trial and at the hearing on his petition for post-conviction relief.  R. at 1504-75; Post-Conviction Tr. at 30-62.  Simpson understood the questions asked of him and gave responsive answers on direct and cross-examination on both occasions that he testified.  It is apparent from the transcript that he comprehended the proceedings and the issues.  Simpson's mother and sister testified at the penalty phase but never described Simpson as having any impairment.  According to Simpson's mother, he is the father of two children, had custody of the children before his arrest, and provided support for the children.

Furthermore, before trial the circuit court referred Simpson for psychological evaluation to determine "the mental condition of the defendant," his capacity to understand the proceedings against him and to assist effectively in his own defense, and the extent to which his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired at the time of the murders.  R. at 597-98.  The psychological examiner stated:

Clinical Evaluation

When Mr. Sedrice Simpson was brought to the examination by a Dallas County sheriff's deputy from the jail at El Dorado, he was noted to be wearing neat and clean orange jail clothing.  His grooming and hygiene were good.  He identified himself as Sedrice Maurice Simpson, age 26, and was able to give his date of birth, social security number, address including zip code and a detailed history and background information.  Mr. Simpson was found to be oriented to time, place and person with no evidence of any unusual thought process on the date of examination.  *He appeared*

*to be functioning within the average normal range of intelligence and had a good command of the language, as well as well developed social skills.* He was courteous and appropriate throughout the interview and appeared to be a healthy and functional specimen of a 26 year old man. His posture and gait were normal and he appeared to understand everything that was said to him. There was no evidence of any delusional thought, hallucinatory activity or any perceptual disturbances. He did not appear to be depressed nor anxious. He appeared confident that he will be found not guilty of the charges against him. He is aware of the seriousness of the allegations against him and the potential ramifications which may occur.

Legal Questions

1.      Competency to Stand Trial. Mr. Sedrice Maurice Simpson apparently has a good understanding of the roles of the judge, the prosecuting attorney, the defense attorney and the jury, as well as his own role in the courtroom. He has a clear understanding that the judge is in charge of the entire proceedings and order in the court. He also understands the function of witnesses and his own role in assisting his attorney in his defense. He understands about the consequences of behavior, sentencing if found guilty and the right to appeal a verdict. Mr. Simpson is currently able to understand rationally and factually the legal proceedings against him and is currently able to assist his attorney effectively in his own defense. Thus, it is recommended that Sedrice Maurice Simpson be adjudicated competent to stand trial.

2.      The Issue of Criminal Responsibility. Mr. Sedrice Maurice Simpson reported that he had smoked crack cocaine voluntarily and recreationally periodically throughout the night preceding his arrest. While his judgment may very well have been influenced by the heavy drug usage, it must be remembered that he voluntarily took those drugs and had done so periodically and repeatedly for the past one and one-half years. He should, therefore, have had an adequate understanding of his ability to function while under the influence of crack cocaine.

Throughout the interview Mr. Simpson talked repeatedly about his ideas of fair play and the fact that he does not believe his rights as a prisoner have been honored appropriately demonstrating his ability to understand the concepts of right and wrong. It is my professional opinion that Mr. Sedrice Maurice Simpson is at the present time and was at the time of the alleged offense able to conform his conduct to the requirements of law.

Resp. Pet. Writ Habeas Corpus Ex. 8 at 9-10 (emphasis added).

Simpson was incarcerated in 1990 and underwent a psychological evaluation at that time.

He was tested using the MMPI. That report states, in pertinent part, "[t]his individual shows no

strong tendency to exaggerate or hide problems.  This suggests that intellectual functioning and judgment are likely to be within normal range." Resp. Pet. Writ Habeas Corpus Ex. 9 at 1.

The record does not permit a finding that the requirements of 28 U.S.C. § 2254(e)(2)(B) are met here.  Simpson has not shown that the facts underlying his claim of mental retardation would be sufficient to establish that no reasonable factfinder would have found him to be eligible for the death penalty under *Atkins*.

Simpson's claim that he is ineligible for the death penalty because he is mentally retarded is dismissed.

C.      **Claim #3: Simpson claims that his Sixth and Fourteenth Amendment rights to the Constitution were violated because he did not receive effective assistance from his court-appointed post-trial counsel.**

Simpson's next claim is that his court-appointed attorney did not provide adequate representation during his post-trial proceedings.  The lawyer who represented Simpson in his Rule 37 petition was appointed by the circuit court pursuant to Rule 37.5 of the Arkansas Rules of Criminal Procedures.  The United States Supreme Court has held:

> There is no constitutional right to an attorney in state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Murray v. Giarratano*, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (applying the rule to capital cases). Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. *See Wainwright v. Torna*, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance).

*Coleman*, 501 U.S. at 752, 111 S. Ct. at 2566.

Simpson's lawyers are well aware that the Supreme Court has held that there is no constitutional right to an attorney in post-conviction proceedings.  They argue, however, that when the state creates a right that is not conferred by the United States Constitution, the state has created

a substantial and legitimate expectation, protected by the Due Process Clause, that defendants will be afforded its benefits.  They cite *Hicks v. Oklahoma*, 447 U.S. 343, 100 S. Ct. 2227, 65 L. Ed. 2d 175 (1980); *Walker v. Deeds*, 50 F.3d 670 (9th Cir. 1995); *Wilkins v. Bowersox*, 933 F. Supp. 1496 (W.D. Mo. 1996); *Harris v. Wood*, 64 F.3d 1432 (9th Cir. 1995); *Fetterly v. Paskett*, 997 F.2d 1295 (9th Cir. 1993); and *Lee v. Norris*, 354 F.3d 846 (8th Cir. 2004).

In other words, Simpson's argument is that, while the Constitution does not guarantee a right to counsel in post-conviction proceedings, if the state creates a right to counsel in post-conviction proceedings, a defendant then has a constitutional right to effective representation by the lawyer appointed to represent him in those proceedings.  None of the cases he cites so holds.  Simpson's argument was raised in *Lee v. Norris*, but the Eighth Circuit stated, "[w]e express no view at the present time on the merits of this argument."  354 F.3d at 847.  Twenty-eight U.S.C. § 2254(i) provides, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  That provision makes no exception for post-conviction proceedings in which the defendant is represented by court-appointed counsel.

Assuming, *arguendo*, that a federal court can grant habeas relief for ineffective assistance of counsel during post-conviction proceedings, Simpson's petition fails to show that he is entitled to such relief.  To prevail on a claim of ineffective assistance of counsel, a defendant must show that the lawyer's performance fell below professional standards of competence and that the deficient performance prejudiced the defendant.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).  Simpson points to numerous issues in his petition filed here that were procedurally defaulted because they were not raised in his Rule 37 petition, but he does

not show that any of those claims have merit.  Because Simpson has not shown that any of these defaulted issues have merit, he has not shown that it was incompetent for his lawyer not to raise these issues in the Rule 37 petition or that the failure to raise them was prejudicial.

Simpson's third claim is dismissed.

D. **Claim #4: Simpson claims that his Eighth Amendment rights were violated by the trial court's failure to instruct the jury that the co-defendant's lesser sentence could be considered as a mitigating circumstance.**

Simpson's fourth claim is that his constitutional rights were violated by the trial court's failure to instruct the jury that his co-defendant's lesser sentence could be considered as a mitigating factor.  The Eighth Circuit recognized that "the sentencer [must] not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death."  *United States v. Purkey*, 428 F.3d 738, 756 (8th Cir. 2005) (citations and internal quotation marks omitted).  Likewise, the Arkansas Supreme Court has stated:

> The United States Supreme Court has held that it is a mandatory safeguard of the Eighth Amendment for the sentencing body to be allowed to consider any mitigating factor that is relevant to the particular offender's case. *California v. Brown*, 479 U.S. 538 [107 S.Ct. 837, 93 L.Ed.2d 934] (1987); *Roberts v. Louisiana*, 431 U.S. 633 [97 S.Ct. 1993, 52 L.Ed.2d 637] (1977); *Gregg v. Georgia*, 428 U.S. 153, [96 S.Ct. 2909, 49 L.Ed.2d 859] (1976). The defense must be allowed during the sentencing phase to introduce any relevant mitigating evidence the defense proffers concerning the character or history of the offender or the circumstances of the offense. *California v. Brown*, supra. Not only must relevant mitigating evidence be admitted, it must actually be considered, which in appropriate cases means specifically instructing the jury to do so. *Penry v. Lynaugh*, *supra*; *Eddings v. Oklahoma*, 455 U.S. 104 [102 S.Ct. 869, 71 L.Ed.2d 1] (1982). In other words, any death sentence that results from a deliberate exclusion of any relevant mitigating evidence is presumptively invalid. *Hitchcock v. Dugger*, 481 U.S. 393 [107 S.Ct. 1821, 95 L.Ed.2d 347] (1987).

*Dansby v. State*,  319 Ark. 506, 528, 893 S.W.3d 331, 343 (1995) (brackets in original).

Section 5-4-602(4)(A) of the Arkansas Code provides that in determining sentence in a capital case evidence may be presented to the jury as to any matters relating to aggravating circumstances enumerated in § 5-4-604, any mitigating circumstances, or any other matter relevant to punishment, including, but not limited to, victim impact evidence, provided that the defendant and the state are accorded an opportunity to rebut such evidence. Evidence as to any mitigating circumstances may be presented by either the state or the defendant regardless of its admissibility under the rules governing admission of evidence in trials of criminal matters, but mitigation evidence must be relevant to the issue of punishment, including, but not limited to, the nature and circumstances of the crime, and the defendant's character, background, history, and mental and physical condition as set forth in § 5-4-605.  ARK. CODE ANN. § 5-4-602(4)(B).  Section 5-4-605 provides:

A mitigating circumstance includes, but is not limited to, the following:

(1) The capital murder was committed while the defendant was under extreme mental or emotional disturbance;

(2) The capital murder was committed while the defendant was acting under an unusual pressure or influence or under the domination of another person;

(3) The capital murder was committed while the capacity of the defendant to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse;

(4) The youth of the defendant at the time of the commission of the capital murder;

(5) The capital murder was committed by another person and the defendant was an accomplice and his or her participation was relatively minor; or

(6) The defendant has no significant history of prior criminal activity.

Simpson proffered a verdict form for each of the two counts listing as a mitigating factor that the jury could find that Harrison, though initially charged with capital murder, through a plea bargain entered a plea of guilty to second degree murder and received a sentence of 20 years imprisonment. The prosecutor objected, first, that the forms were misleading because Harrison was sentenced to two 20-year sentences to run consecutively and, second, that the sentence Harrison received was irrelevant. R. at 1697-98. The circuit court agreed with the prosecutor's argument. *Id.* at 1699. The record does not show that Simpson modified the instruction to avoid the confusion and requested the trial court to give the modified version. The Arkansas Supreme Court reviewed Simpson's claim regarding the mitigating circumstance and found no error. The court stated:

> There was no error in the court's refusal for two reasons. First, the proffered verdict forms were misleading and confusing. Simpson stated that Harrison had been sentenced to twenty years for each murder, but failed to indicate whether the sentences were being served consecutively or concurrently, or whether Harrison had also been convicted of and sentenced for robbery. Because the proffered forms could have misled and confused the jury, the trial court did not err by refusing to submit them. *See Townsend v. State*, 308 Ark. 266, 273, 824 S.W.2d 821, 825 (1992).

> Second, the disposition of Harrison's charges was not relevant to Simpson's punishment. Ark. Code Ann. § 5-4-602(4) (Repl.1997) provides in pertinent part:

>> Evidence as to any mitigating circumstances may be presented by either the state or the defendant regardless of its admissibility under the rules governing admission of evidence in trials of criminal matters, *but mitigation evidence must be relevant to the issue of punishment*, including, but not limited to, the nature and circumstances of the crime, and the defendant's character, background, history, and mental and physical condition as set forth in § 5-4-605. [Emphasis added.]

> Thus, to be admissible, evidence of mitigating circumstances must be relevant to the issue of the defendant's punishment. *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999).

> The disposition of Harrison's charges, which Simpson sought to offer to the jury as a mitigating circumstance, had nothing to do with Simpson's character, record, background, history, condition, or the circumstances of his crime. This information was not relevant to the issue of Simpson's punishment, and the trial court therefore did not err in refusing to submit the proffered forms to the jury.

*Simpson*, 339 Ark. at 473-74, 6 S.W.3d at 109.

The supreme court's first reason for finding no error – that the proffered instruction was misleading and confusing – is independent of the federal question and adequate to support the judgment; therefore, the question cannot be reviewed by this Court. *Coleman*, 501 U.S. at 729, 111 S. Ct. at 2553. As a matter of Arkansas law, a trial court need not give an instruction that is misleading or confusing. *Jones v. Parrish*, 330 Ark. 521, 527-28, 954 S.W.3d 934, 937 (1997). This Court has no authority to review the application of this rule of Arkansas law to Simpson's case.

Morever, Simpson has failed to prove that the second reason was contrary to or an unreasonable application of federal law. The clearly established federal law is that the sentencer must "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964-65, 57 L. Ed. 2d 973 (1978) (emphasis in the original). The opinion of the Arkansas Supreme Court, like the Arkansas statute, tracks the language of *Lockett*. The opinion is not contrary to *Lockett*. Nor is it an unreasonable application of *Lockett*. The jury found that Simpson was guilty of capital murder of both Pennington and Garner; that with premeditated and deliberate purpose he caused their deaths; and that he caused their deaths under circumstances manifesting extreme indifference to the value of human life. R. at 1655. These verdicts indicate that the jury believed Harrison's account, not Simpson's. According to Harrison, Simpson went into the store alone and, without telling Harrison what he was going to do, shot

23

Pennington and Garner.  Harrison's participation in the murders was not comparable to Simpson's. On these facts, it was not an unreasonable application of *Lockett* to this case for the Arkansas Supreme Court to say that Harrison's sentence was irrelevant because Harrison's sentence did not relate to Simpson's character or record or to the circumstances of Simpson's crime.  Whether a co-defendant's sentence would be relevant under *Lockett* if his participation in the crime were comparable that to the defendant is an issue that need not be decided here.

Furthermore, Harrison testified during his direct examination and cross-examination that he had entered a plea of guilty and had been sentenced to 40 years in prison.  R. at 1254, 1271.  The record shows that the jury discussed Harrison's plea bargain. *Id*. at 1907; Post-Conviction Tr. at 90. The trial court instructed the jury:

> Form 2 lists some factors that you may consider as mitigating circumstances. However, you are not limited to this list. You may, in your discretion, find other mitigating circumstances.

R. at 1701.  The jury heard the evidence that Simpson wanted them to hear regarding Harrison's sentence and discussed that evidence during deliberations either at the guilt phase or the sentencing phase. *Cf. Eddings*, 405 U.S. at 110, 102 S. Ct. at 874.  The jury was not precluded from considering any aspect of Simpson's character or record or any circumstances of the offense that Simpson proffered.  The record does not show that Simpson was prejudiced by the trial court's refusal to instruct the jury to consider Harrison's sentence as a mitigating circumstance.

Simpson's fourth claim is dismissed.

**E.      Claim #5: Simpson claims his Eighth Amendment rights were violated by the trial court's failure and his attorney's failure to submit as mitigating circumstances that he was impaired as the result of drug abuse or intoxication and he may have had lesser involvement due to the participation of Harrison.**

Simpson claims that two mitigating circumstances should have been submitted and such failure amounts to constitutional error. First, Simpson claims that the jury should have been instructed pursuant to Ark. Code Ann. § 5-4-605(3) that it could find as a mitigating circumstance that the capital murder was committed while the capacity of Simpson to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of intoxication or drug abuse.  Second, Simpson claims that the jury should have been instructed pursuant to Ark. Code Ann. § 5-4-605(5) that it could find as a mitigating circumstance that the capital murder was committed by another person, that he was an accomplice, and that his participation was relatively minor.

> ### *(1)*    *The capital murder was committed while the capacity of Simpson to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of intoxication or drug abuse.*

Several persons, including Simpson's crack dealer, Bernard Gregory, testified regarding Simpson's purchases and use of crack cocaine on the night of the murders.  *See, e.g.,* R. at 1161-70. Simpson also testified to his drug use on the night of the murders during his direct examination and on cross-examination. *Id.* at 1504-75. On cross-examination he testified regarding the multiple times he smoked crack that night, starting at approximately midnight and continuing through the night. *Id.* at 1527, 1530.  Harrison testified they smoked crack possibly around 4:30 a.m. on the way to the store, which could have been within minutes of the murders.  *Id.* at 1234-35.  The record shows without dispute that Simpson and Harrison smoked crack multiple times on the night of the murders. *See id.* at 1224-76; 1504-75.  In fact, they may have smoked it within fifteen minutes of committing the murders.  *Id.* at 1234-35, 1507-08.

The record reflects that Simpson's lawyer submitted verdict forms at the punishment phase that included in the list of mitigating factors that Simpson was impaired as a result of intoxication or drug use, but that language was stricken and initialed by defense counsel. *Id*. at 1891-1900. There is no mention in the record that defense counsel requested the impairment instruction in any colloquy with the court. It appears that defense counsel initially intended to request the impairment instruction but made the tactical decision at trial not to request it.

This Court cannot say that the decision not to request an impairment instruction was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. The prosecutor argued at the sentencing phase, "[i]t was all about money for crack cocaine." R. at 1706. And, "[h]e was in there to get money to feed his crack cocaine habit and he killed two people so he wouldn't get caught." *Id*. at 1708. "[H]e reduced the lives of two innocent women to the value of a $20.00 rock of crack cocaine and then ended their lives without mercy." *Id*. at 1711. Likewise, in rebuttal the prosecutor stated, "here's a man [who] had to go out and pawn a gun . . . to buy cocaine on the night of the killings." *Id*. at 1726. It is obvious that the prosecutor thought that emphasizing Simpson's use of crack cocaine would increase the likelihood that the jury would impose the death penalty. It would not have been outside the wide range of professionally competent assistance for Simpson's lawyers to have reached the same conclusion; nor does the record show a reasonable probability that, had the jury been instructed as Simpson now contends, it would have imposed a lesser sentence.

Although Simpson seems to say that the circuit court should have *sua sponte* instructed the jury that it could find as a mitigating circumstance that Simpson was impaired by drug use, he cites no authority for that assertion, and this Court is aware of none.

26

Furthermore, the claim is procedurally barred from review and Simpson has not excused his default. "In most habeas corpus cases, the ubiquitous specter of procedural default overshadows our consideration of alleged constitutional violations. This case is no different." *Krimmel*, 56 F.3d at 875. Simpson failed to raise the claim until he filed the current habeas petition. On his direct appeal to the Arkansas Supreme Court, Simpson raised five issues, none of which included the lack of an impairment instruction. *See Simpson*, 339 Ark. at 470-73, 6 S.W.3d at 107-09. Simpson then presented two issues to the Arkansas Supreme Court for post-conviction relief. Neither of those claims included the lack of an impairment instruction. *See Simpson*, 355 Ark. at 298, 138 S.W.3d at 673.

The Eighth Circuit has "held repeatedly that a claim has not been fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas petition have been properly raised in the prisoner's state court proceedings." *Krimmel*, 56 F.3d at 876. *See also Jones v. Jerrison*, 20 F.3d 849, 854 (8th Cir.1994) (in order to "fairly present" a claim to the highest state court, the petitioner must present the same facts and legal theories to the state court that he later presents to the federal courts); *Pollard v. Armontrout*, 16 F.3d 295, 297 (8th Cir. 1994) (to preserve a claim for federal *habeas* review, a state prisoner must "present the same legal theories and factual bases to the state courts").

"[U]nless [Simpson] can show adequate cause for his failure to raise the [issue] in the state courts and actual prejudice from the alleged constitutional violations, or if he can demonstrate that failure to review a claim would result in a fundamental miscarriage of justice," the Court must dismiss his claim. *Krimmel*, 56 F.3d at 876. The jury was aware of Simpson's drug use on the night of the murders. As stated above, the record is full of testimony that Simpson smoked crack cocaine

that night; and the prosecutor reminded the jury of that testimony while arguing for the death penalty. The jury was instructed that it could consider mitigating factors other than those specifically listed. R. at 1701.  Had the jury thought that Simpson's use of crack cocaine mitigated his culpability, it was free so to find.  The record does not show actual prejudice or a fundamental miscarriage of justice from the failure to instruct the jury that it could consider as a mitigating factor that Simpson may have been impaired at the time of the murders.

Simpson's claim regarding the impairment instruction is dismissed.

> *(2)*     ***The capital murder was committed by another person and the defendant was an accomplice and his participation was relatively minor.***

Simpson also claims that the jury should have been instructed that it could consider as a mitigating circumstance that his participation was relatively minor.  Simpson did not request such an instruction at trial.  He cites no authority for the proposition that the circuit court had an obligation to give the instruction *sua sponte*.  He did not raise this issue until he filed his habeas petition here.  This issue is procedurally defaulted, and the default has not been excused.

Moreover, Simpson's argument is without merit.  He was convicted of capital murder.  The jury obviously found that he, not Harrison, shot Wendy Pennington and Lena Garner.  He could not have been entitled to an instruction that the jury could consider that his involvement was relatively minor.

Simpson's claim that the jury should have been given an instruction regarding his minor participation is dismissed.

**F.**     **Claim #6: Simpson claims his Eighth Amendment rights were violated by the jury finding that no mitigating circumstances were presented, when in fact they were presented.**

Simpson claims his constitutional rights were violated because the jury found that no mitigating circumstances were presented when they were in fact presented. He cites no authority for the proposition that the jury's finding renders its decision to impose the death penalty unconstitutional. Furthermore, this issue was not presented to the state courts and has been procedurally defaulted.

Simpson's claim that his constitutional rights were violated when the jury found no evidence of any mitigating circumstance is dismissed.

G.   **Claim #7: Simpson claims that his Sixth, Eighth and Fourteenth Amendment rights were violated by the stationing of numerous uniformed law enforcement officers around him during the penalty phase arguments.**

Simpson next claims it was prejudicial for the uniformed law enforcement officers to be present in the courtroom during his sentencing. The Supreme Court has addressed this issue:

> The first issue to be considered here is thus whether the conspicuous, or at least noticeable, deployment of security personnel in a courtroom during trial is the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest specific to each trial. We do not believe that it is.
>
> The chief feature that distinguishes the use of identifiable security officers from courtroom practices we might find inherently prejudicial is the wider range of inferences that a juror might reasonably draw from the officers' presence. While shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable. Jurors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence. Indeed, it is entirely possible that jurors will not infer anything at all from the presence of the guards. If they are placed at some distance from the accused, security officers may well be perceived more as elements of an impressive drama than as reminders of the defendant's special status. Our society has become inured to the presence of armed guards in most public places; they are

29

doubtless taken for granted so long as their numbers or weaponry do not suggest particular official concern or alarm.

*Holbrook v. Flynn*, 475 U.S. 560, 568-69, 106 S. Ct. 1340, 1345-46, 89 L. Ed. 2d 525 (1986).

Simpson's claim has been procedurally defaulted.  Simpson failed to present this claim to the state court and cannot present it to this Court for the first time for review.  Simpson has not met the cause and prejudice and excuse standard to allow the Court to review the claim.  Moreover, even if the issue were not procedurally defaulted, the record does not reveal any prejudice or that the trial court's decision was in any conflict with federal precedent.

Simpson's seventh claim is dismissed.

**H.      Claim #8: Simpson claims that his Eighth and Fourteenth Amendment rights were violated by the trial court permitting the introduction of irrelevant victim impact testimony.**

Simpson's final argument is that the trial court erroneously permitted the introduction of irrelevant victim impact testimony.  Simpson claims that the trial court erroneously permitted inappropriate and irrelevant testimony from Katrina Miller, Pennington's step-sister.  The following is a transcript of the testimony in question:

Miller:                                    I'm a teacher in the public school system; I teach fourth-graders, social studies and science. When I interact with those thirty-two kids and see their lives and their homes, I wonder what are they going to do some day, and I try to help them see. I shared all of this with them when we talked about our section on drugs and alcohol and what they do to you and what kind of lives people lead with that.  I can only hope that I imparted some good and that they see what outcomes happen because there are people out there who just don't value life. They don't value themselves.  They just don't care about people.

My mother talked about my daughter. She was four when it happened and she['s] five now. I've spent hours and hours at bedtime with her. She's afraid she's going to lose me, like her cousin lost her mother. I can't tell her it's not going to happen. I took a gun from a kindergartner that was in her class this past month.

Simpson's Attorney:     Your honor, may I approach?

(WHEREUPON, THE OBJECTION WAS MADE AT THE BENCH)

Simpson's Attorney:     This is not jury impact testimony.

Prosecutor:             Judge, it is. She's talking about how she tries to – I think what she said was she's trying to explain to this little girl about the fear that she has about her mother being taken from her. That's a very real fear for this child, because the aunt was taken and she's had violence in her own school. I can get her off of this if you want me to, but I just don't think that's objectionable. It's part of the impact on her life. She's viewing the world differently now.

The Court:              Overruled.

Prosecutor:             (Continuing) You were talking about your daughter, trying to make her feel safe again?

Miller:                 I can't. I can't tell her that she's not going to lose me. It happens all the time. We see it on T.V. We hear about it. She hears the news. She knows that I took the gun from the kindergartner that's in her class. I can't promise her that. It's real to her. She's five and it's real to her.

                        She's lost her aunt and she thinks about her cousin, how she's never going to have her mother again, and it scares her. It scares me. I try to tell her life is not fair and things happen and we've got to go on and we've got to trust God to take care of us, because we can't lead bitter lives. We've got to go on. She has her whole life in front of her and I told her if she loses

31

me, she'll still have family that loves her and will carry and will bring her through her life and that God will take care of her.  But, it only becomes real to you when it happens to you. It changes your whole outlook on life.

I won't take these people out here for granted.  I love them.  I'll hug them, tell them that I love them every day, because you just have no promises in your life, what's going to happen.  I'm sure if Wendy knew what was going to happen to her that day, she wouldn't have gone in, but we don't have that before us.  We don't know what's going to happen to us.  I'll never be the same person again.

R. at 1680-82.

Simpson's claim is unconvincing.  First, the claim is procedurally barred from review because Simpson did not present the issue in his state-court petition.  Second, Simpson's claim is without merit.  Simpson cites no authority for the proposition that the United States Constitution requires the exclusion of this testimony.

Simpson's eighth claim is dismissed.

## CONCLUSION

Sedrice Maurice Simpson's petition for writ of habeas corpus is hereby DENIED in its entirety.

IT IS SO ORDERED this 30th day of May, 2006.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE